## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Dan William Pettis, ) | |
| ) | Case No. 2:17-cv-02603 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Mazuma Credit Union ) | |
| ) | |
| Serve President and CEO Brandon Michaels at: ) | |
| 7260 W. 135th St. ) | |
| Overland Park, KS 66223 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT FOR DAMAGES

COMES NOW Plaintiff, Dan William Pettis, by and through his attorneys at The Law Offices of Tracy L. Robinson, LC, who, pursuant to 15 U.S.C. § 1681, *et seq*., in his Complaint for Damages states and alleges to the Court as follows:

## INTRODUCTION

This is an action for damages brought by individual consumer Dan William Pettis against Mazuma Credit Union for violations of the Fair Credit Reporting Act (hereafter "FCRA"), 15 U.S.C. §§1681, *et seq*, as amended.

## JURISDICTION AND VENUE

1.  Jurisdiction over this proceeding arises from 15 U.S.C. § 1681 and generally under 28 U.S.C. § 1331.

2.  Venue in this Court is proper in that Defendant transacts business in the state of Kansas and Kansas is where the injuries occurred.

## PARTIES AND SERVICE

3. Dan William Pettis (hereafter "**Plaintiff**"), is a natural person who resides in the State of Kansas.

4. Defendant Mazuma Credit Union, hereafter ("**Defendant**"), is a credit union that regularly conducts business in Kansas, and may be served through its President and CEO Brandon Michaels, at 7260 W. 135th St., Overland Park, KS 66223.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. On March 14, 2017, Plaintiff filed a Chapter 7 Bankruptcy in the District of Kansas as Case No. 17-20397-rdb.

6. Plaintiff had a secured car loan with Defendant to be surrendered and discharged through his Chapter 7 bankruptcy.

1. The debt owed to Defendant was listed in Schedule D, but the Best Case software used to prepare Plaintiff's Schedules populated the Creditor name as Federal Employees Credit Union c/o CommunityAmerica Credit Union.

2. The pertinent page of Plaintiff's Schedule D is attached as Exhibit A.

3. Defendant did not get notice of Plaintiff's Chapter 7 bankruptcy.

4. Plaintiff's Chapter 7 bankruptcy was a "No Asset" case.

5. Plaintiff received his discharge on June 19, 2017.

6. The BNC Certificate of Mailing of the Notice of Discharge of Debtor is attached as Exhibit B.

7. The Courts have routinely found that all prepetition debts are discharged unless excepted from discharge under 11 U.S.C. §523(a). *North River Ins. Co. v. Baskowitz*, 194 B.R. 839, 843 (Bank. E.D. Mo. 1996).

8. In a no asset case, all prepetition debts are discharged even if a debt is omitted from a debtor's schedules. *In re Wagner*, 2008 Bankr. LEXIS 1349 (Bank. N.D. Iowa 2008).

9. Section 523(a)(3) does not "act to deny a debtor's discharge for not listing or scheduling a creditor in time to file a proof of claim." *In re Anderson*, 72 B.R. 783, 786 (Bankr. D. Minn. 1987) quoted by *Eide v. Colltrech, Inc.*, 987 F.Supp.2d, 951, 958 (D. Minn. 2013).

10. Thus, the debt owed to Defendant was discharged through Plaintiff's Chapter 7 bankruptcy.

11. On or about September 7, 2017, Plaintiff requested and reviewed his credit reports from Equifax, Experian and Trans Union.

12. Plaintiff became aware that Defendant was misreporting information on his credit reports.

13. Defendant was incorrectly reporting an outstanding balance of $7,088.

14. However, Plaintiff discharged the debt owed to Defendant through his Chapter 7 case.

15. The pertinent pages of Plaintiff's incorrect credit reports are attached as Exhibit C.

16. On September 15, 2017, Plaintiff sent Disputes to Equifax, Experian and Trans Union disputing Defendant's incorrect reporting in accordance with 15 U.S.C. § 1681i.

17. Copies of Plaintiff's dispute letters are attached as Exhibit D.

18. Experian and Trans Union corrected the reporting internally.

19. Equifax sent an Automated Consumer Dispute Verification ("ACDV") to Defendant as required by 15 U.S.C. § 1681i and Defendant responded and verified the incorrect reporting.

20. The pertinent pages of Plaintiff's incorrect Equifax credit report are attached as Exhibit E.

21. The ACDV put Defendant on notice that Plaintiff had discharged the debt in bankruptcy.

22. Defendant had a duty to investigate the bankruptcy and correct its reporting accordingly, but failed to do so.

23. Defendant's failure to conduct a reasonable investigation of Plaintiff's account was a substantial factor causing Plaintiff reduced credit scores, emotional distress, frustration, missed time from work in order to tend to this matter, missed personal time in order to tend to this matter, vehicle operating costs for miles driving in order to tend to this matter, inconvenience and the hindrance to his fresh start entitled under the Bankruptcy Code.

24. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

## COUNT I
## DEFENDANT MAZUMA
## VIOLATIONS OF THE FCRA

25. Plaintiff repeats, realleges and incorporates by reference each and every prior paragraph in this Complaint.

26. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act (hereafter "**FCRA**"), 15 U.S.C. 1681, *et seq*.

27. Defendant qualifies as a "furnisher of information to credit reporting agencies" within the meaning of the FCRA.

28. The FCRA prohibits furnishers of information to credit reporting agencies (hereafter "**CRAs**") to furnish information which is inaccurate, irrelevant, and improper, or

4

which such furnishers have reason to believe is inaccurate.

29. Delinquencies, account balances, and other repayment information on a loan is consumer report information to CRAs within the purview of the FCRA.

30. The FCRA also provides privately enforceable duties where consumers may dispute the accuracy and completeness of information by initiating a reinvestigation through the CRAs. 15 U.S.C. § 1681i.

31. After receipt of a disputed account from a CRA, a furnisher has a duty to reinvestigate and review the information provided and conduct its own investigation of the accuracy and completeness of the disputed information.

32. The courts have consistently adopted the standard that the furnisher's reinvestigation must be evaluated under a reasonable investigation standard, which should be evaluated from a number of factors.

33. The furnisher must consider the information communicated in or with the notice of dispute from the CRA. 15 U.S.C. § 1681i(a)(1)(A).

34. In addition, the furnisher must also consider other information available to it, including earlier complaints or other communications received from the consumer before the reinvestigation ever began. *Bruce v. First U.S.A. Bank*, 103 F.Supp.2d 1135 (E.D. Mo. 2000).

35. It is important to keep in mind that the duties of furnishers of information imposed under § 1681s-2(b) are only triggered after the furnisher receives notice of a consumer's dispute from a CRA. Regardless of which CRA notified a furnisher of information of a consumer dispute, a furnisher may have duties related to the other CRAs, such as reporting that information was found to be incomplete or inaccurate or modifying, deleting, or blocking the reporting of the information. *Tilley v. Global Payments, Inc.*, 603 F.Supp.2d 1314 (D. Kan.,

5

2009).

36. Any furnisher who fails to comply with the investigation requirements is liable to the consumer for statutory damages, the costs of litigation, and attorney fees. 15 U.S.C. § 1681o.

37. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000 per violation, for punitive damages, as well as for costs and attorney fees.  15 U.S.C. § 1681n.

38. The standard for willful violation of the FCRA is reckless disregard, and that reckless disregard need not be knowing, intentional, premeditated, or malicious. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

39. After receiving notice of Plaintiff's dispute letter from Equifax, Defendant should have conducted an investigation and properly updated the information reported, but failed to do so.

40. As a result of the actions of Defendant, Plaintiff suffered damages including reduced credit scores, emotional distress and frustration.

41. The plain language of the FCRA's damages provisions permits Plaintiff to recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681n(a)(1)(A).

42. Further, minimum statutory damages between $100 and $1000 per violation, punitive damages, as well as the costs of the litigation and attorney fees are available when a furnisher willfully violates its duties under the FCRA. *Rodgers v. McCullough*, 296 F. Supp.2d 895 (W.D. Tenn. 2003).

43. Defendant was notified by Equifax of Plaintiff's dispute letter requesting an investigation that it was reporting inaccurate information on Plaintiff's credit reports.

44. Defendant elected to ignore that information it received, failed to do a reasonable investigation and refused to correct Plaintiff's credit reports.

45. The purpose of the investigation is not simply to confirm that the credit reporting agency has recorded accurately the information initially furnished by the creditor, but also to determine in good faith the accuracy of the information itself in light of available information.

46. Defendant knew it was required by law to have investigation procedures and protocols in place to conduct an investigation of Plaintiff's account information and Defendant's failure and refusal to have proper procedures in place to conduct a reasonable investigation of Plaintiff's account constitutes willful, conscious and reckless disregard for Plaintiff's rights, including those under the FCRA.

47. Defendant's failure and refusal to conduct a reasonable investigation and correct the information Defendant is furnishing to the credit bureaus concerning Plaintiff's account constitutes a willful violation of the FCRA.

48. Defendant fails and refuses to have the proper policies and procedures in place with regards to the credit reporting on accounts included in bankruptcy.

49. This failure and refusal is compounded by Defendant's failure and refusal to have the proper policies and procedures in place to investigate and correct mistakes reporting to the credit reporting agencies and is willful, intentional and in conscious disregard of the rights of Plaintiff and others justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays judgment in his favor for damages as provided by the FCRA in such amount as fair and reasonable, for his actual damages incurred, for the imposition of punitive damages against Defendant in such sum as will deter Mazuma Credit Union, and others in the future from similar conduct and for such other relief the Court deems just and

reasonable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Dan William Pettis respectfully requests this Court award the following:

a. Actual Damages;

b. Statutory Damages for each violation of the FCRA;

c. Punitive Damages;

d. Costs and reasonable attorney's fees pursuant to the FCRA;

e. Correction of all misreported information on Plaintiff's Equifax credit report; and

f. For such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff demands a trial by jury in this action.

Respectfully submitted,

/s/ Chelsea S. Springer
Chelsea S. Springer #20522
The Law Offices of Tracy L. Robinson, LC
818 Grand Boulevard, Suite 505
Kansas City, MO  64106
Phone:  (816) 842-1317
Fax:     (816) 842-0315
chelseas@tlrlaw.com
Attorney for Plaintiff